### 143.   MEAGER *v.* LINDER LUMBER COMPANY.

The evidence being such as to have authorized a recovery by the plaintiff, the court erred in directing a verdict for the defendant.

Complaint, from Worth superior court—Judge Spence. June 4, 1906.

Submitted February 26,—Decided March 11, 1907.

*Ellis & Ellis,* for plaintiff.   *J. H. Tipton,* for defendant.

POWELL, J.   The plaintiff, Meager, sued Linder Lumber Company, alleging that the defendant was indebted to him in a named sum "on account for lumber cut and shipped by petitioner to Rosendo Torras, Brunswick, Ga.,' by directions given petitioner by the said Linder." An account in the shape of lumber bills was attached. The defendant's plea amounted to the general issue. Upon the hearing Meager testified, that he and Linder were both sawmill men, operating in the same community; that not having orders ahead sufficient to employ his mill to its full capacity, he spoke of the matter to Linder, who informed him that he (Linder) had accepted an order from Torras containing more bills than he would be able to cut and ship with ordinary effort, and that if he

(Meager) desired to do so, he might take four or five of these bills and cut them and ship them to Torras; he took bills for four or five cars, cut them and shipped them to Torras, and this is the lumber sued for; he did not know Torras; when the amount became due he demanded payment of Linder, who told him to write Torras and draw on him, and that he (Linder) would also notify Torras to pay the draft; he wrote and drew accordingly; but Torras dishonored the draft and wrote that Meager was not known in the contract. Plaintiff testified, on cross-examination, that he did not remember that anything was said at the time he took the orders as to where he was to get his money,—whether from Torras or from Linder. The lumber was shipped, billed from Meager to Torras. In billing the lumber Linder's name was not mentioned, but the number of the order was given, which, in accordance with the custom of sawmill men, would identify the lumber as being shipped on Linder's contract. He made several efforts to collect for the lumber from Torras, but was not successful, and did not make complaint to Linder until Torras refused to pay. Under the custom of the trade, the mill man originally accepting the order for lumber is responsible to other mill men who accept a portion of the order and fill a portion of the contract. When this lumber was shipped, Meager wrote Torras, telling him that the lumber was to be credited on Linder's contract.

Linder testified, that he, being "loaded" with orders, agreed to divide the Torras order with Meager; that he said to Meager, "You can have all or a part of it. You see the price. I will have no interest in it. They will render an account to you and pay you for what you cut." He took a part of the order. Afterwards he came back and said, "I have drawn on these people for that lumber, and they have turned it down." He (Linder) did not collect any of the money for this lumber from Torras, but instructed Torras to pay the same to Meager. Torras testified, that he received the lumber testified about, but as he had no contract with Meager and did have a contract with Linder as to the same, he paid Linder for it; that he knew of no contract between Meager and Linder, whereby he was to pay the former, and, as he had received the lumber under Linder's contract, he paid Linder in full for it and declined to pay Meager; that he never assented to any contract whereby he was to pay Meager instead of Linder. There was

other testimony, but a recounting of the same is not necessary, the same being chiefly cumulative to that above stated. The court directed a verdict for the defendant, and the plaintiff brings error.

Under this testimony the direction of a verdict was error. The court below probably took the view that Meager's action should have been against Torras, and not against Linder; but the evidence does not demand a finding that this is so. It must be borne in mind that in order to support an action in favor of Meager against Torras, it would be necessary for the former to show a contract, either express or implied, on the latter's part to pay for the lumber. No express contract is shown, and while, under the doctrine of implied assumpsit (Civil Code, §4936), the law would ordinarily imply a promise on Torras's part to pay Meager the reasonable value of the lumber upon the delivery and acceptance thereof, still this implication does not necessarily arise, for under one tenable theory of the evidence he received the lumber under the express contract which he had with Linder, under which he was obligated to pay Linder and not another. If it be conceded or proved that Torras received this lumber under the Linder contract, it follows that no agreement or arrangement between Meager and Linder, unassented to by Torras, could change his original promise so as to obligate him to pay one portion of the purchase-price of the entire order of lumber to Linder, and the remainder to Meager. Otherwise a partial assignment of Linder's chose in action against Torras would result; and this is not legally possible without the latter's consent. Torras had the right to stand upon the singleness of the original contract. *Central Ry. Co.* v. *Dover,* ante, 240; *Rivers* v. *Wright,* 117 *Ga.* 81; *Western Union Tel. Co.* v. *Ryan,* 126 *Ga.* 191 (1).

The present action being in a court of law, the above legal principle was applicable, and not the equitable doctrine upon this subject, which may be enforced only in a court of equity having all necessary parties before it. The evidence was not only consonant with the theory that Torras was not bound, but also was not inconsistent with a finding that Linder was under implied contract to pay Meager for the lumber. Although our simpler and less technical system of practice has operated to abolish many of the ancient forms of action, yet every right which could have been asserted under common-law procedure will still be recognized and protected by our courts. At common law the existence of a form for the

bringing of an action was a recognition of the right which that form was designed to enforce. Our law recognizes the same rights, but gives no higher regard to the matter of form than to make the requirement that the plaintiff shall distinctly and orderly set forth his cause of action. Now at common law there was a count in assumpsit which would lie in behalf of a plaintiff who had furnished goods, or who had done work and labor for another at the request of the defendant, and in such cases a promise to pay was implied against the defendant. "The form of the action of assumpsit known as general or indebitatus assumpsit is founded on what the law terms an implied promise on the part of the defendant to pay what in good conscience he is bound to pay the plaintiff." 1 Wait's Actions and Defenses, 382. "Assumpsit is the proper remedy against one who acquiesces in and implicitly sanctions an act of another, which act, if done by himself, would amount to an undertaking in law." Miller v. Creyon, 2 Brevard (S. C.), 108. "Where work is done for A at the request of B, indebtitatus assumpsit may be maintained against B." Clark v. Roop, 15 Ark. 172. So that if Meager at the request, or with the sanction, express or implied, of Linder cut and shipped this lumber and Linder received the benefit of it, the law implies a contract on his part to pay for it.

There were portions of the evidence which, if believed by the jury, would have authorized a recovery by the plaintiff on this theory. If the lumber went to Linder's credit on his contract with Torras, he received the benefit thereof. Of course, if Linder collected for it, as Torras testified he did, the benefit was direct; if he did not collect for it, he none the less received the benefit of it, irrespective of the question of Torras's solvency or insolvency; for if he be solvent (and there is no intimation in the record to the contrary), Linder can still collect the amount; if he be insolvent, Linder's condition is no worse than if he had furnished his own lumber under the contract, and he is benefited to the extent that Meager's lumber was used instead of his own. If Linder did collect the money, certainly Meager could have sued him for money had and received; and the defendant in error calls attention to the fact that this suit is not predicated upon that cause of action. However, it does not follow that, because the plaintiff has not sued for money had and received, he may not sue for the value of the lumber and use the fact of the defendant's receipt of the money as evidence

of his acquiescence in and sanction of the plaintiff's having furnished the lumber for his (the defendant's) benefit, thereby raising the implication of a promise to pay. Of course, if the contract between Meager and Linder was that Meager was to look to Torras for the money, and that Linder was to be absolved of responsibility if Torras did not pay, and if, as a matter of fact, Torras did not pay, Linder would not be liable; but in light of what we have decided above, it was error for the judge to decide these disputed issues by the direction of a verdict. ·        *Judgment reversed.*