### 64429. NATIONAL PROPERTY MANAGEMENT & INVESTMENT, INC. v. POPE.

BIRDSONG, Judge.
Return of earnest money. In 1977 Monte Sharp together with several others formed in effect an investment group as a joint venture to purchase a bank. Sharp is also incidentally the sole owner of a corporation, appellant National Property Management and Investment, Inc., but there is no evidence this corporation was a member of or related to the investment group formed for purchase of the bank. Donald LaFave was in the banking business and because of his expertise, he was induced by the investment group (of which he was a part) to represent the group as its "spokesman" in any negotiations for the location and purchase of a bank. In February, 1978, LaFave together with other members and representatives of the investment group met with the appellee Robert Pope who was a majority owner of First Fulton Bank and Trust Company and representative of other shareholders for the purpose of Sharp's group's purchasing the First Fulton Bank. An agreement of sale was entered into by Robert Pope as seller and Donald LaFave as purchaser. For the several months prior to the February agreement, LaFave had been paid $1,500 a month by Sharp's investment group while LaFave looked for a suitable bank. After the purchase was accomplished, LaFave was to be its president.

The purchase agreement provided that because of the bank's capital position, $160,000 would have to be placed in the capital assets of the bank in order to make it conform to state bank regulatory requirements. Also, a provision of the agreement required the bank to be in good standing with the state regulatory agency and the determination as to good standing was left to the decision of the purchaser upon the advice of purchaser's attorney. On the date set for closing, the attorney for the purchasers (also one of the investment

group) advised the purchasers that in his opinion, the bank was not in good standing, and in addition there were insecure loans of some magnitude and recommended against closing the purchase. Thirty days before closing when the agreement to purchase had been executed, LaFave signed the purchase agreement as "purchaser" though it was fully understood that he, LaFave, represented a group and was not the sole purchaser. A $25,000 earnest money deposit was paid to Pope at the time the agreement was signed with the balance of the $700,000 purchase price to be paid in cash at the time of closing. The purchasers apparently understood that Sharp would be the majority stockholder in the bank and would put up most of the purchase price. The $25,000 earnest money deposit was paid by check furnished by National Property Management and Investment Inc. It is clear however that Sharp was acting as an individual and simply used the assets of his wholly owned corporation in this instance in his personal capacity, as he frequently had in the past.

After some continuing efforts to close the purchase, Sharp, as owner, demanded the return of the corporation's check and disavowed the agreement. When Pope refused to return the check, the corporation sued Pope on a theory of money had and received. Pope defended on the ground that the escrow money was forfeited upon breach of contract and filed a counterclaim for lost profits. A jury returned a verdict in favor of the corporation (appellant) for the $25,000 plus interest. Upon motion the trial court entered judgment nov for Pope concluding that the corporation was not a party at interest and had no contractual privity with Pope so as to recover the earnest money. Appellant National Property Management brings this appeal enumerating seven alleged errors. *Held:*

1. The first four enumerations of error relate to findings of fact by the trial court. Appellant complains that the trial court erred in finding as a matter of fact that Pope received the $25,000 from LaFave rather than from Sharp's corporation; that LaFave received the money from the corporation; that the corporation was seeking to obtain from Pope money that had been advanced to LaFave; and that the corporation had no legal relationship to LaFave. To the contrary, we find evidentiary support for each of the court's factual conclusions.

Sharp unequivocally testified that the corporation had no business relationships with Pope. Sharp dealt extensively with others through the investment group as a member thereof, but Sharp never gave any indication that the corporation was a party to or interested in the investment group's activities or that Sharp's financial backing would be in any capacity other than as the individual, Sharp. When the agreement to purchase was signed, Pope signed as seller (though

the agreement recognized that Pope was not the sole owner of the stock being purchased), LaFave as purchaser though the agreement reflected that LaFave represented others; and Sharp acted as witness. The evidence is uncontested that Sharp made available to LaFave as purchaser for the investment group the sum of $25,000 by furnishing a check in that amount drawn upon his corporation, but the corporation was not a member of the investment group and was not a "purchaser." Sharp testified that LaFave was not an agent for the corporation but was simply a spokesman for the investment group. LaFave was entitled to act only so far as the investment group would authorize. Even LaFave testified that he acted only as the group representative and he had to abide by their decision. He likewise denied being an agent for the corporation. It is manifest that the investment group did not intend to act in the purchase of the bank as separate individuals by name, for they deliberately authorized LaFave to sign as an individual in their behalf. Thus it defies logic to argue that the money was not "given" to LaFave to make the earnest money payment inasmuch as he was the designated purchaser. For the same reasons, regardless who physically handed the check to Pope, the money came from LaFave to Pope, from the designated buyer to the designated seller.

Lastly, it is equally clear that the corporation freely delivered (or lent) the $25,000 to LaFave without any apparent strings acting through and on the behalf of Sharp as individual financier but more particularly on behalf of the investment group in order that LaFave could fulfill his obligation to the investment group to bind the agreement to purchase by payment of earnest money. At no point do we find any indication that the corporation was a part of the negotiation process.

While appellant corporation brought this action as an action sounding in equity to recover money had and received which Pope in good conscience should not retain, appellant at the beginning of its case proved the contract and premised part of its claim upon the failure of the condition precedent, a tacit recognition of the contract. The case presented ample evidence of a contract and a possible breach thereof. Because of the parties' proof of who was involved in the negotiations for sale of the bank, the agreement itself bringing about the putative sale, and the payment of the $25,000 as earnest money pursuant to the agreement, the trial court was warranted in concluding that the nature of the action truly sounded in contract. The evidence made clear that the appellant corporation was not a party to that contract nor in privity with the parties to the contract. *Stein Steel &c. Co. v. Goode Constr. Co.,* 83 Ga. App. 821, 823 (65 SE2d 183). This is not to imply that the corporation may be wholly

without remedy. We do not reach a decision whether the appellant corporation has or has not a cause of action against its officer or the investment group, or whether LaFave or Sharp, on behalf of the investment group, has a right of recovery against Pope (and ultimately to the corporation), inasmuch as the sales agreement makes no provision for disposition of the earnest money in the event of failure of the agreement. See *McGinnis v. Milhollin,* 64 Ga. App. 462 (13 SE2d 591); *Meager v. Linder Lumber Co.,* 1 Ga. App. 426 (57 SE 1004).

2. Appellant also complains the trial court erred in concluding as a matter of law that should the corporation be allowed to recover the $25,000 from Pope, Pope would not be protected from a potential second suit by LaFave or other purchasers. We find no error in such a finding of law. Under the facts, each of the investors was exposed to some degree of risk in the venture of buying the bank. The $25,000 was paid on behalf of the investors, not the corporation. To return the entire earnest money to the appellant corporation disregards any element of joint ownership anticipated by any of the other common venturers. We cannot say that none of the other investors had no interest in some of the earnest money paid in good faith to seal the agreement and thus a possible claim to recover the value of his proportionate risk from the earnest money.

3. A directed verdict or judgment notwithstanding the verdict should be granted where construing the evidence in favor of the respondent a verdict is demanded in favor of the moving party. *Crews v. Crews,* 219 Ga. 459 (134 SE2d 27); *Fordham v. Garrett-Schwartz Motor Co.,* 121 Ga. App. 237 (173 SE2d 450). Considering the proceedings as litigated by the parties, the trial court was warranted in concluding this case was one sounding in contract. Inasmuch as appellant admitted that it had no contractual privity to the contract itself or any of the parties to the contract, the trial court did not err in granting the judgment notwithstanding the verdict in favor of the appellee Pope.

*Judgment affirmed. McMurray, P. J., and Banke, J., concur.*

DECIDED SEPTEMBER 17, 1982 —
REHEARING DENIED OCTOBER 4, 1982 — 

*Richard Alan Gordon,* for appellant.
*David T. Emerson,* for appellee